UNITED STATES of America, Plaintiff,

v.

CHILSTEAD BUILDING COMPANY, INC., Terry Chilton, and Leo W. Smith, Defendants.

No. 96–CV–641 TJM/RWS.

United States District Court, N.D. New York.

Aug. 18, 1998.

NY (Charles E. Roberts, Asst. U.S. Atty., of counsel), for Plaintiff.

Chilstead Building Company, Inc., Plattsburgh, NY, pro se.

## MEMORANDUM, DECISION & ORDER

MCAVOY, Chief Judge.

### I. FACTS

This action concerns a construction project performed by defendant Chilstead Building Co., Inc. ("Chilstead" or "defendant") involving the replacement of a roof at the United States Army Reserve Center in Plattsburgh, New York.[1] *See* Pl. Rule 7.1(f) Stat. ¶¶ 1–4. The United States Army issued a "Solicitation, Offer, and Award" (hereinafter "the contract") on or about July 24, 1992, and Chilstead was awarded the contract on or about September 10, 1992.[2] *Id.* ¶¶ 1,4. The contract provided specific guidelines regarding any deviations from the original specifications. Paragraph 23 of the Statement of Work, attached to the contract, reads as follows:

> SW–23 *IMPORTANT NOTICE:* The contractor will not accept instructions issued by any person other than the Contracting Officer or his/her authorized representative acting within the limits of his/her authority. No information other than that which may be contained in any authorized amendment to this solicitation or any authorized modification to any resulting contract issued by the Contracting Officer, which may be received from any person employed by the U.S. Government or otherwise, shall be considered as grounds for deviation from any provisions, conditions or other terms of this solicitation or any resulting contract.

Furthermore, Paragraph 24(b) reads as follows:

Thomas J. Maroney, U.S. Attorney for the Northern District of New York, Syracuse,

---

1. This suit was filed against Chilstead Building Co., Inc., Terry Chilton, President, and Leo W. Smith, a Chilstead employee. Plaintiff requests the Court to dismiss this action against defendants Chilton and Smith. The Court grants the motion with prejudice, and thus Chilstead Building Co., Inc. remains sole defendant in this action.

2. Paragraph 29 of the "Solicitation, Offer and Award" reads in part: "[Y]our offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) [t]he government solicitation and your offer, and (b) the contract award. No further contractual document is necessary." Pl. Mem. Exhibit A.

No oral statements of any person, whomsoever, will in any manner or degree modify or otherwise effect the terms or conditions of this contract. The Contracting Officer shall be the only person authorized to approve changes in any of the requirements under this contract, and notwithstanding any provisions contained elsewhere in this contract, said authority shall remain solely with the Contracting Officer. CORs shall be limited to the authority specified in their letter of appointment.

Pl. Rule 7.1(f) Stat. ¶¶ 6–7.

A pre-construction meeting was held on November 5, 1992 and work began shortly afterwards. On February 26, 1993, Chilstead formally requested approval to make three major changes on the roof project. In particular, Chilstead proposed to eliminate the additional wood blocking as shown on Detail "D" Sheet A–1 and configure a truss heavier than that called for in the specifications. Def. Exhibit H. The proposed changes were disapproved by plaintiff by letter dated April 15, 1993. Pl. Rule 7.1(f) Stat. ¶ 10. Chilstead never received an approved, signed submittal for the heavier trusses that it installed. Id. ¶ 11. Nevertheless, Chilstead began installation of the deviant trusses sometime after April 15, 1993, and half of the trusses were erected by April 28, 1993. Def. Mem. at 8. Plaintiff certified that the project was 100% completed on August 16, 1993. Def. Exhibit D.

Both parties agree that while defendant performed the work pursuant to the contract, the work failed to meet the contract specifications. Specifically, the project completed by defendant did not align truss panel points with the concrete masonry unit walls below, and defendant did not receive an "approved signed submittal" for the type of trusses which were installed. Pl. Rule 7.1(f) Stat. ¶¶ 9–12. Chilstead maintains that it received verbal approval to install the deviant trusses from plaintiff's consulting engineer, N.K. Bhandari, Inc., provided that extra support blocking be installed to bring the trusses into conformance with the original plans. Def. Mem. at 1. Chilstead further maintains that verbal acceptance of the truss system and further lack of action by plaintiff after installation induced a belief by Chilstead that the truss design as specified in the contract had been waived by plaintiff.

After a number of bi-weekly cite inspections, inspector Thomas Shaw wrote in an October 8, 1993 report that Chilstead "had fulfilled his obligation to the contract". Def. Exhibit C. Plaintiff payed all but 1% of the final contract price on July 26, 1993. Pl. Exhibit E. On December 13, 1994, the Directorate of Contracting, Gordon Reynolds, sent a letter revoking final acceptance of the project to Chilstead, citing the installation of the disapproved trusses and subsequent deviations from the original contract specifications caused by the installation of the deviant trusses. Def. Exhibit E.

## II. PROCEDURAL HISTORY

Plaintiff filed an action for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–3731, and in the alternative, for damages for fraud, breach of contract, and unjust enrichment on April 22, 1996. Defendant brought counterclaims alleging malicious prosecution, abuse/misuse of legal process, bad faith, fraud, negligence, conspiracy and collusion. Plaintiff now moves for partial summary judgement on the False Claims Act and breach of contract claims, and for dismissal of defendant's counterclaims.

## III. DISCUSSION

### A. Summary Judgment

Summary judgment shall be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.*

When the moving party has met its burden, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

### B. Breach of Contract Claim

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim because there is no dispute that defendant did not perform the work as specified under the contract. Specifically, plaintiff maintains that defendant's installation of the deviant truss system constitutes a breach of contract.

■ New York law provides that "[i]f a performance differing from that required by the contract is approved or accepted, such action may constitute a waiver of performance in accordance with the contract. Waiver requires a knowing acceptance of defective performance." 22A N.Y. JUR.2D *Contracts,* § 372 (1996). In *Mississippi Shipbuilding Corp. v. Lever Bros. Co.,* 237 N.Y. 1, 142 N.E. 332 (1923), the New York Court of Appeals determined that even when a contract specifically requires any contract changes to be made in writing, changes made in the absence of written authorization that are accepted by the buyer will not constitute a breach of the contract where the buyer fails to give notice to the seller within reasonable time. *Id.* at 9–10, 142 N.E. 332. Furthermore, it is settled law that " 'a contractor ought not to be paid for that which he has failed to furnish unless there be, in fact, a waiver which means an acceptance knowing of defects or else an estoppel.' " *Ting–Wan Liang v. Malawista,* 70 A.D.2d 415, 421 N.Y.S.2d 594, 597 (2d Dep't 1979) (*quoting Cawley v. Weiner,* 236 N.Y. 357, 361–362, 140 N.E. 724 (1923)).

■ Based on the evidence in the record, a factual issue remains as to whether plaintiff, through project inspector Shaw, knowingly accepted the work as completed by Chilstead and therefore waived the original truss specifications. Specifically, defendant offers an affidavit from plaintiff's facilities manager, Frank E. McGrath, who claims that Shaw spoke with him personally about the truss issue. McGrath further notes that at the time of truss installation, the uninstalled deviant trusses were on the ground and readily accessible for Shaw's observation, and that the roof was uncovered and the trusses were over 50% erected. Def. Exhibit R. McGrath assumed that there was no problem with the trusses because if there had been, Shaw would not have allowed them to be further installed. *Id.* It is undisputed that Shaw indicated in an April 28, 1993 report that about half the trusses had been installed with sheathing covering two-thirds of the trusses. Def. Exhibit Q. Neither in that report nor in following reports did Shaw mention that the installed trusses were not those which were specified by the contract. Shaw again commented on the trusses in a May 7, 1993 report, noting "[c]ontractor setting trusses on corridor from (illegible term) to drill hall." Def. Exhibit H. Again, there was no mention of the deviant trusses.

Chilstead further asserts that Shaw acknowledged in writing on July 21, 1993, subsequent to the complete installation of the deviant trusses, that "we inspected the complete work cite and I could find no deficiencies other than those that were noted previously and corrected." He further acknowledged that defendant had "therefore fulfilled [its] obligation to the contract." Def. Exhibit C. Finally, defendant points to the sixteen month period between full payment and the December 13, 1994 letter from Gordon Reynolds revoking acceptance of the completed work. Def. Exhibit E. *See Lever Bros.,* 237 N.Y. 1 at 10, 142 N.E. 332 (if after acceptance of goods, buyer fails to give notice to the seller of the breach within reasonable time after buyer knows or should have known of such breach, seller shall not be liable therefore).

This evidence raises fact issues as to whether plaintiff knowingly accepted the deviant trusses, thus waiving the right to assert such deviations as a breach of the contract. *See Lever Bros.,* 237 N.Y. at 10, 142 N.E. 332; *Ting–Wan Liang,* 421 N.Y.S.2d at 597. Accordingly, plaintiff's motion for summary

judgment on its breach of contract claim is denied.

### C. False Claims Act Claim

The False Claims Act is applicable to any person who knowingly:

(1) presents, or causes to be presented, a false or fraudulent claim for money or property against the United States; (2) makes or causes to be made a false statement to get a false claim paid or approved; (3) conspires to defraud the government by getting a false claim paid; or (4) knowingly makes, uses, or causes to be used, a false statement to conceal, avoid or decrease an obligation ... to the government.

31 U.S.C. § 3729(a).

■ As Chilstead was performing the work, it submitted periodic "progress payment" claims. These claims certified that the work had been performed "in accordance with the specifications, terms, and conditions of the contract." Pl. Mem. at 2. Plaintiff asserts that Chilstead violated the False Claims Act in submitting five sworn claims that it had performed the work in accordance with the contract, when it had not.

The Second Circuit has long held that the False Claims Act is applicable only to claims which are " 'false, fictitious, or fraudulent' and there must be clear and convincing proof." *United States v. Foster Wheeler Corp.*, 447 F.2d 100 (2d Cir.1971). The evidence offered by defendant creates genuine issues of fact as to whether it knowingly violated the False Claims Act. Accordingly, summary judgment is denied in this respect.

### D. Counterclaims

■ Plaintiff contends that the counterclaims should be dismissed for lack of jurisdiction and as barred by sovereign immunity. Defendant's counterclaims alleging a breach of contract are barred by the Tucker Act, because breach of contract claims seeking more than $10,000 can only be brought in the Court of Claims. *See United States v. Buiges*, 524 F.Supp. 1288, 1289 (S.D.N.Y.); 28 U.S.C. § 1346(a)(2). Since defendant's claim arises out of a contract with the United States and seeks more than $10,000, the claim is barred and therefore dismissed.

■ Second, plaintiff contends that insofar as these counterclaims allege malicious prosecution and torts related to fraud and deceit, they are barred by sovereign immunity. The Federal Tort Claims Act's waiver of sovereign immunity does not apply to "[a]ny claim arising out of ... malicious prosecution, misrepresentation, deceit, or interference with contract rights." *See* 28 U.S.C. § 2680(h); *Compton v. Ide*, 732 F.2d 1429 (9th Cir.1984); *Hogan v. United States*, 642 F.Supp. 813 (S.D.Ca.1986). Accordingly, these counterclaims also are dismissed.

### IV. Conclusion

For the reasons stated herein, the Court hereby DENIES plaintiff's partial summary judgment motion on the False Claims Act and breach of contract claims, and GRANTS plaintiff's motion seeking dismissal of defendants counterclaims.

**IT IS SO ORDERED.**