PAUL MEYER, Respondent, *v.* WOODWARD-BROWN REALTY COMPANY, Appellant.

First Department, June 6, 1924.

Vendor and purchaser — action by purchaser to recover damages for failure of vendor to construct house on lot according to contract — contract called for garage within walls of house to be constructed with fireproof walls and ceiling approved by building department of New York city and by board of fire underwriters — deed was accepted — board of fire underwriters refused to approve garage with walls constructed with metal lath and plaster — said walls and ceiling not fireproof — approval by board of fire underwriters necessary — accepting deed did not bar purchaser from suing for breach of contract.

In an action by a purchaser to recover damages for breach of a land contract by the vendor based on its failure to construct a house on the lot purchased in accordance with the contract, it appeared that the contract provided that a garage should be constructed within the walls of the house and should have fireproof walls and ceiling approved by the building department of the city of New York and by the board of fire underwriters; that the walls and ceiling of the garage were constructed of metal lath nailed to wooden uprights and beams and covered with plaster about one and one-half inches thick; that the purchaser accepted a deed and occupied the house before discovering the character of the walls and ceiling of the garage; and that the board of fire underwriters refused to approve the garage as thus constructed and increased the purchaser's insurance rates.

*Held,* that the walls and ceiling of the garage were not fireproof as required by the contract and furthermore they were not approved by the board of fire underwriters as provided in the contract and that such approval was withheld because of the character of the walls and ceiling.

The acceptance of a deed and the occupancy of the house did not amount to a waiver of the breach of the building contract barring the purchaser from the right to recover damages therefor.

CLARKE, P. J., and DOWLING, J., dissent.

APPEAL by the defendant, Woodward-Brown Realty Company, from a determination and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on or about the 27th day of June, 1923, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in favor of the plaintiff.

*I. T. Flatto*, for the appellant.

*Knox & Deignan* [*George H. Francoeur* of counsel], for the respondent.

MERRELL, J.:

The action is brought by the plaintiff to recover damages growing out of the alleged improper construction by the defendant of a house and garage upon premises contracted by the defendant to be sold to the plaintiff in Queens county, near Astoria, N. Y. The house in question was a part of a development and building scheme carried on by the defendant, Woodward-Brown Realty Company. A written contract was entered into between the parties on October 2, 1919, whereby the defendant agreed with the plaintiff to sell and convey to him, in consideration of the sum of $8,000, a building lot in the borough of Queens. The written contract between the parties for the conveyance of the land in question provided that the defendant should erect thereon a dwelling in accordance with a plan or pamphlet which was made a part of the contract and annexed thereto, and which contract and pamphlet provided, as a part of the building construction by the defendant upon the plaintiff's said premises, for a garage to be built within the exterior walls of said house, the dining room of said house to be over said garage. It was provided in said written contract that the garage should have fireproof walls and ceiling, approved by the building department of the city of New York and by the board of fire underwriters of said city. The written contract of sale is plaintiff's Exhibit I. After describing the premises to be sold by lot and block number it is stated that the sale is " together with the house thereon, as represented in pamphlet attached." This pamphlet, while introduced in evidence, was not produced upon the argument, but it was conceded by the parties that the building which was to be erected by the defendant in accordance with the plans and specifications contained in said pamphlet was to include a garage to be built within the exterior walls of the house and directly under the dining room thereof, and that the garage was to have " fireproof walls and ceiling, approved by the Building

Department and the Board of Fire Underwriters." The defendant erected a house, including a garage on the property contracted to be sold and finally a formal deed was executed and delivered to the plaintiff. The contract further provided that payment of the $8,000, being the contract price of said property with the building, was to be $3,500 in cash, $500 of which was paid on the execution of the contract, and $3,000 when the house was completed and deed delivered, and that the balance of $4,500 was to be secured by the purchaser executing his bond secured by a purchase-money mortgage on the premises payable in three years with interest at six per cent per annum, payable semi-annually. The plaintiff made the cash payments provided for in the contract and took a deed of the premises on April 20, 1920. On April 23, 1920, the plaintiff moved into the house. The evidence shows that the construction of the building and garage received the approval of the building department of the city of New York, but that the board of fire underwriters of said city withheld their approval of the construction of the garage. Sometime, I think, in July, 1920, the plaintiff, whose insurance rates were increased owing to the construction of the building, made complaint to the defendant that the garage did not contain fireproof walls and ceiling as agreed in said contract, and that his insurance rates had been nearly trebled by reason of the faulty construction, and asked the defendant what it was going to do about it. Plaintiff testified that he heard nothing further from the defendant and finally brought action to recover the sum of $1,000 as his damages by reason of the failure of the defendant to keep its contract in relation to the fireproof construction of said garage.

The evidence shows that the walls of the garage were of the most flimsy construction, and instead of being fireproof were built merely of steel lath known as high-rib with a coating of patent-right plaster applied to either side; that the walls when completed were only about an inch and a half in thickness. Adjoining the garage proper was a cellar in which was located a heating apparatus and boiler for heating the building. Between the garage and this heating apparatus, the latter being only about two feet away from the partition wall, was a wall of only an inch and a half in thickness constructed as aforesaid of metal lath and some sort of a patent-right combination plaster. The ceiling, which was to be of fireproof construction, was built by nailing wire lath upon the joists or timbers sustaining the dining room floor and this patent-right plaster applied to the underside. This ceiling was only from a half to five-eighths of an inch in thickness. A great deal of evidence was given upon the trial with reference

to what constituted fireproof walls as provided for in the contract. The witnesses for the plaintiff testified that the walls which the defendant had erected inclosing this garage were of fire-resisting material but were not fireproof within the well-known use of that term or as contemplated in the Building Code of the city. The witnesses for the plaintiff testified that the only construction known as a fireproof wall was at least eight inches in thickness. The provisions of the Building Code were proven to the effect that a fireproof wall could be built only of (a) bonded brick work laid in cement mortar; (b) concrete consisting of one part Portland cement and not more than two parts of sand and four parts of gravel, stone or other approved aggregate that will pass through a three-quarter inch ring, suitably reinforced with wire or metal fabric; (c) cinder concrete consisting of one part Portland cement and not more than two parts of sand and five parts of clean well-burned steam boiler cinders suitably reinforced with wire or metal fabric; (d) porous or semi-porous terra cotta blocks with shells and web at least one inch thick laid in cement mortar, thoroughly bonded or secured by metal ties; (e) solid gypsum blocks containing not more than twenty-five per cent by weight of cinders, asbestos fibre, wood chips or vegetable fibre laid in gypsum plaster or cement mortar, thoroughly bonded or secured by suitable galvanized metal ties or fabrics; (f) any material or form of construction that will resist the action of flame and a heat of 1,700 degrees Fahrenheit for at least two hours without raising the temperature of the material to be protected above 550 degrees Fahrenheit by transmission through a thickness of two inches as determined by tests prescribed in the rules adopted by the superintendent of buildings. (See Building Code, § 351, subd. 6; Code of Ordinances of City of New York, chap. 5, § 351, subd. 6; Cosby's Code of Ordinances [Anno. 1922], p. 111.) A number of witnesses testified that the construction of the building erected by the defendant for the plaintiff was not fireproof construction as provided for in the contract; that while the material used in the thin flimsy partitions and in the ceiling was of fire-resisting or fire-retarding material, that did not make the ceiling or walls fireproof by any means. Some of the witnesses testified that the ceiling construction in garages required that the bonding should be of steel, and that there should be at least four inches of concrete with two or three inches of ashes or cinders and sustained by metal lath and cement mortar. Other witnesses sworn by the plaintiff were apparently disinterested and swore positively that the construction of the plaintiff's garage by the defendant did not comply with the terms of the contract. Particularly William A. Kenney

was sworn as a witness by the plaintiff and he testified that he was inspector of buildings under construction in the city of New York. Kenney testified that a fireproof wall could only be built of approved masonry or brick or of cement mortar, hollow tile blocks or stone work and that such a wall could not be less than eight inches in thickness if of brick and not less than six inches if constructed of terra cotta blocks. Kenney testified that a fireproof ceiling involved cinders and concrete with steel beams or some sort of steel support reinforced with wire or other reinforcement and not less than four inches thick and composed of cinders, sand and cement, and if not reinforced then they are to be increased in depth for the arch as to its span. Officials of the board of underwriters testified in plaintiff's behalf, giving their reasons for refusing approval of the construction of plaintiff's garage, basing their refusal upon the ground that such construction was not fireproof and was not in accordance with fireproof construction; that the only thing that could be done to obtain approval of the board of underwriters was to erect fireproof walls of not less than eight inches in thickness and the construction of a ceiling of approved fireproof materials upon steel beams, all of reinforced concrete construction.

Henry S. Story, sworn as a witness in plaintiff's behalf, testified that he was a builder by profession operating in the borough of Manhattan, at Great Neck, N. J., and at Tarrytown; that at the request of the plaintiff's attorneys he inspected the plaintiff's garage and that he found a metal lath partition plastered on two sides which had been pierced in two or three different places and which he found to be from one and one-fourth to one and one-half inches thick; that the ceiling was of expanded metal lath and that where pierced it was about half an inch thick and five-eighths high; that the lath of the ceiling was nailed onto the under side of the floor beams; that from the cellar side these beams were exposed to view over the top of the garage proper. Story testified that in his opinion these partitions were not fireproof, and that the only thing to be done to comply with the contract and to provide fireproof walls was to remove the present walls and ceiling and build with brick eight inches thick laid up in cement mortar or concrete wall eight inches thick; that the ceiling would have to be of iron beams extending from the east wall of the building over to the partition spaced not more than four feet apart. The under side of these beams would have to be covered with wire lath and then two inches of cement mortar. The under side of the wire would be composed of three-quarter inch cement mixed with sand. Then over the top of all of that there would be filled in six inches of

concrete composed of one part cement, two of sand and three of ashes; that thereby a fireproof garage would be built, as constructed by the witness. Story testified that in his judgment it would cost $925 to install proper construction in the plaintiff's garage.

Considerable testimony was given in behalf of the defendant, several witnesses testifying that the construction of the plaintiff's garage was in compliance with the contract, and that the walls were fireproof. These witnesses testified that there was no difference between fireproof construction and fire-resisting construction or fire-retarding construction. The main witness was the inspector of the bureau of buildings, one Riedy, who had passed this particular house and garage built by the defendant for the plaintiff. Riedy, of course, could not testify other than that the building which he had passed and approved was according to the requirements of his department. He, however, admitted on cross-examination that fireproof walls mean walls of stone eighteen inches in thickness. He also testified that a fireproof wall was any wall built of fireproof material without regard to its thickness.

I think the plaintiff clearly had the best of the issue, and that the evidence clearly demonstrated that this construction was sham in the extreme. The court, however, narrowed down the issues, I think, very properly, to the question of damages sustained by the plaintiff. The court held that the defendant had failed to construct a building and garage which would receive the approval of the board of underwriters as provided in the contract. There was no dispute but that the board of underwriters withheld its approval and refused to approve of the construction of such garage. The court, therefore, and, I think properly, held that the only question for the determination of the jury was as to the damages sustained. The jury rendered a verdict in plaintiff's favor for $250. Both sides moved to set aside the verdict, but the plaintiff has not appealed and is now asking for the affirmance of the judgment entered thereon.

The appellant claims as his main point and ground for reversal that the plaintiff, having accepted a deed of the premises, waived any objection to the construction made thereon and that the complaint should have been dismissed. This question seems to have been passed upon by this court. The present action is one of several brought by purchasers of lots of the defendant company. The sufficiency of a complaint identical to that in the present action has been passed upon by the courts. The City Court of New York in the case of *Price* v. *Woodward-Brown Realty Co.* sustained a demurrer to the complaint and denied plaintiff's motion for judgment on the pleadings. The Appellate Term reversed the City Court, sustaining the complaint and overruling the defendant's

demurer thererto. (*Price* v. *Woodward-Brown Realty Co.*, 190 N. Y. Supp. 561.)   Leave was granted to the defendant to appeal to this court from the determination of the Appellate Term, reversing the City Court.   This court unanimously sustained, without opinion, the determination of the Appellate Term (201 App. Div. 837.)   Permission to appeal to the Court of Appeals from our decision was denied.   (Id. 944.)

I think the law is well settled that although the plaintiff accepted a deed of the premises and went into possession thereof, he did not waive any breach of the building contract which the defendant had committed.   In *Cawley* v. *Weiner* (236 N. Y. 357) the Court of Appeals said: "This is not a case of the sale of goods (*Spence* v. *Ham*, 27 App. Div. 379).   The house was built upon the defendant's property.   They could move into it, live in it and in this sense accept it without waiving any defects in construction."   (See, also, *Mississippi Shipbuilding Corporation* v. *Lever Bros. Co.*, 237 N. Y. 1.) The Court of Appeals there says: "When buildings have been constructed upon real estate as the owner cannot return the buildings he may keep them and refuse to pay the contract price if there has been a breach."

There were two trials had in this action.   At the close of the first trial the jury rendered a verdict in favor of the plaintiff for twenty-five dollars.   This verdict the court set aside on motion for insufficiency of the damage awarded.   Thereupon the trial was continued and more witnesses were sworn upon the question of damages, and it was at the close of the second trial that the verdict upon which the judgment appealed from was entered was rendered.

I think, on the whole, the plaintiff should have received greater damages than he did receive, but as the plaintiff has not appealed he cannot take advantage of the order denying his motion to set aside the verdict.

The determination appealed from should be affirmed, with costs to the respondent against the appellant.

McAvoy and Martin, JJ., concur; Clarke, P. J., and Dowling, J., dissent.

Determination affirmed, with costs.