Bernard S. Meyer, J.
In April, 1961 plaintiff contracted to purchase from Lido Dunes, Inc., a house which was then in process of erection. On July 10,1961 plaintiff and his wife took title to the house. Having discovered substantial defects and some omissions in the construction of the house, plaintiff brought this action against the corporation, its president Russo, and one Morris Tepperman. His complaint sets forth six causes of action: the first is based on misrepresentations by Russo and Tepperman that the house, to the extent then completed, had been constructed, and would be completed, in good and workmanlike manner and in conformity with the Building Code of the Town of Hempstead; the second is against Russo and Tepperman for inducing the corporation to breach its contract; the third is against the corporation for breach of contract; the fourth is against the corporation for the same misrepresentations referred to in the first; the fifth is against the corporation for fraudulent concealment of latent defects; the sixth is against the corporation for breach of implied warranty. Defendants plead an affirmative defense of merger and also counterclaim for extras in the amount of $2,849. After trial before the court without a jury, judgment is, for the reasons hereafter stated, awarded as follows: the first, second, fourth, fifth and sixth causes of action are dismissed; plaintiff is awarded $3,375 on the third cause of action and defendant is awarded $175 on the counterclaim and the Clerk is directed to enter judgment in favor of plaintiff for the net amount of $3,200, with interest from October 12, 1962 (the date the action was commenced) and costs and disbursements of the action.
The first, second, fourth and fifth causes of action are dismissed for failure of proof. As to the first and fourth causes, there is no showing that either Russo or Tepperman or anyone on behalf of the corporation made the representations claimed. As to the second, there is no proof that either Russo or Tepperman induced the corporation to breach its contract, or that Russo, who was president of the corporation, acted with a motive for personal gain as distinguished from gain to the corporation (Potter v. Minskoff, 2 A D 2d 513, affd. 4 N Y 2d 695; 32 N. Y. Jur., Interference, § 32, p. 191).
The predicate of the fifth cause of action is fraudulent concealment. If it be assumed that failure to disclose facts known to the seller but unknown to the buyer may constitute an actionable fraud (Greenberg v. Glickman, 50 N. Y. S. 2d 489, mod. and affd. 268 App. Div. 882, mot. for lv. to app. den. 268 App. Div. 987; cf. Perin v. Mardine Realty Co., 5 A D 2d 685, affd. 6 N Y *325 2d 920; see Ann. 80 ALR 2d 1453), nonetheless, to sustain the action there must be actual knowledge on the seller’s part (Jackson v. Goad, 73 N. M. 19). In the present case the court finds that Mr. Busso was negligent in not discovering the defects in the piers and footings, but does not find that he or the corporation in fact had the required knowledge nor that his negligence was so gross as to warrant the inference of fraud (see Ultramares Corp. v. Touche, 255 N. Y. 170, 186; Mohawk Overall Co. v. Brown, 163 App. Div. 157). It is, therefore, unnecessary to consider the defendant’s contention that plaintiff’s damage proof does not meet that required in a fraud case (see Luciano v. Oliver, 15 A D 2d 982; Terris v. Cummiskey, 11 A D 2d 259; but, see, Carpenter v. Donohue, 388 P. 2d 399 [Col.]).
The third cause of action is predicated on the contract obligation (par. 3) “to erect and complete a one family dwelling substantially similar to the Model House Type Victorian on exhibit by the 'Seller, which dwelling shall be constructed in accordance with the requirements as to materials and workmanship of the Municipality wherein it is * * * located ” and on a set of plans which the court finds was furnished to plaintiff at the time the contract was signed. The only reference in the contract to plans relates to FHA or VA financed construction, which was not the case with plaintiff’s house. The plans are, nevertheless, to be considered since the court finds that plaintiff’s house was the first of its type erected and the plans are, therefore, necessary to explain the meaning of “ Model House Type Victorian ”. Defendant contends that its contract obligation was fulfilled and that, even if not, plaintiff cannot recover because of paragraph 24 of the contract. That provision reads: “ Anything herein to the contrary notwithstanding, it is specifically understood and agree by the parties hereto that the acceptance and delivery of the deed of conveyance at the time of the closing of title hereunder, without specific written agreement which by its terms shall survive such closing of title, shall be deemed to constitute full compliance by the Seller with the terms, covenants and conditions of this contract on its part to be performed. It is further agreed that none of the terms hereof except those specifically made to survive title closing shall survive such title closing.” ;
Whether obligations of the purchase contract are merged in the deed is generally a matter of the intention of the parties (Disbrow v. Harris, 122 N. Y. 362; Morris v. Whitcher, 20 N. Y. 41; Siebros Finance Corp. v. Kirman, 232 App. Div. 375; Lambert v. Krum, 121 Misc. 170; 15 N. Y. Jur., Deeds, § 72, p. 147; *326 Friedman, Contracts and Conveyances of Real Property, § 7.2; Comment: Merger of Land Contract in Deed, 25 Albany L. Rev. 122; Ann.; 38 ALR 2d 1310). For this reason contract provisions which can only be performed after conveyance of title are held not merged (Industrial Development Foundation v. United States Hoffman Mach. Corp., 11 Misc 2d 625, affd. 8 A D 2d 579; Bellanca v. Jubiler, 62 N. Y. S. 2d 874). Likewise undertakings collateral to the conveyance of the real estate, such as for the construction of a house or the furnishing of personal property, are not merged in the deed (Meyer v. Woodward-Brown Realty Co., 209 App. Div. 548, affd. 239 N. Y. 613; Price v. Woodward-Brown Realty Co., 190 N. Y. S. 561, affd. 201 App. Div. 837; Appell v. Comstock & Ludlam, Inc., 118 N. Y. S. 2d 634, affd. 1 A D 2d 1018; Ferro v. Miller, 41 Misc 2d 331; Terry v. Raif, 205 Misc. 1059; Russ v. Lakeview Development, 133 N. Y. S. 2d 641; Kilbane v. Scarsdale Downs Homes, 132 N. Y. S. 2d 234; Greenfield v. Liberty Constr. Corp., 81 N. Y. S. 2d 550).
Plaintiff argues that it is the foregoing rules rather than paragraph 24 which govern the claim on the contract. The argument is predicated on Cohen v. Polera & Sons Constr. Corp. (N. Y. L. J., Sept. 30, 1958, p. 14, col. 4) which construed the quoted contract provision as simply embodying the common-law doctrine of merger in the contract and held that it did not merge collateral agreements and could not be construed as a waiver or advance release of improper workmanship which could not be discovered until long after the contract was executed. That construction ignores the fact that the “collateral” agreement to construct the house is one of the ‘ ‘ terms, covenants and conditions ” of the contract to be performed by the Seller. Under paragraph 24, delivery of the deed constitutes full compliance with the terms, covenants and conditions of the contract and moreover 41 none of the terms hereof except those specifically made to survive title closing shall survive such title closing ” (emphasis supplied). Evident from the language of the provision is the intention to merge not only the agreement to convey but also the collateral agreement to construct, and unless contrary to public policy that intention must be given effect.
'**■ To the extent that construction defects are discoverable at the time title closes public policy is not violated by enforcement of the contract provision, because the purchaser can protect his interests by either demanding a “specific written agreement ” covering the defect or refusing to close until it has been corrected. With respect to latent defects, however, the *327 provision if enforced is an absolute bar to action with respect to defects which by hypothesis are unknown at the time barred. While limitations may run from breach rather than discovery (Citizens Utilities Co. v. American Locomotive Co., 11 N Y 2d 409) the construction provisions of the contract are not breached until the defectively constructed residence is conveyed to the purchaser. Thus, with respect to latent defects, the cause of action is extinguished at the moment it is created. It has long been the law of New York that while limitations may be “ prescribed by written agreement” (CPLR 201) an unreasonably short limitation period is against public policy and unenforcible (Planet Constr. Corp. v. Board of Educ., 7 N Y 2d 381; Sapinkopf v. Cunard S. S. Co., 254 N. Y. 111; Matter of Brown & Guenther v. North Queensview Homes, 18 A D 2d 327). The‘| court concludes that as concerns defects not discoverable at the time of title closing, paragraph 24 does not bar this action (see Beagelman v. Lydia Homes, 11 Misc 2d 158, 160; Lutz v. Bayberry Huntington, Inc., 148 N. Y. S. 2d 762). In so concluding, the court has not overlooked Sklarsky v. Wayne Lawrence Constr. Corp. (28 Misc 2d 391) which it respectfully declines follow.
Defendant argues, however, that intention to merge the construction provisions of the contract is to be found in the fact that at the closing a written list of open items (Exhibit A) was agreed upon and signed. Disbrow v. Harris (supra) held that where an escrow agreement was prepared at the time of conveyance it may be assumed that with the exception of items set forth in the escrow agreement the parties intended the provisions of the contract to be treated, in all other respects, as satisfied by the conveyance. While that ruling has been applied to bar recovery without consideration of whether the defects for which recovery was sought were latent or patent (Senter v. Golden, 154 N. Y. S. 2d 731; Zanphir v. Bonnie Meadows, Inc., 127 N. Y. S. 2d 269; Kerr v. Emory Housing Corp., N. Y. L. J., March 5, 1953, p. 740, col. 3) the court notes that the defects considered in the Disbroio case were discovered prior to closing and despite that fact were omitted from the escrow agreement. Since merger is a matter of intention and since as the Disbrow case itself states (p. 365) “ there is no presumption of intention to give up ” the contract benefits, the court concludes that it should not spell out intent on plaintiff’s part in accepting the conveyance together with the written list to give up his claim for defects which were latent and of which he had no knowledge.
It follows from the above that plaintiff may recover in this *328 third cause of action for defendant’s failure (1) to meet the requirements of the Town Building Code as to materials and workmanship provided the defect was not reasonably discoverable by him at the time of closing, or (2) to complete an item set forth in the written list made up at the closing. Of the items in the second category, only two need be noticed. The front elevation on the plans shows an ornamental railing at roof level, though on side elevations it appears at the second floor rather than the roof level. Its omission was patent and, therefore, plaintiff cannot recover for it unless it was in the written list. Plaintiff claims it was referred to in item 9 of the list, but the court finds that that item referred to inside railings. The item is disallowed. The list required the builder to provide two coats of white outside paint on trim with the exception of windows by May 31, 1962. The court finds that this was not done and that the reasonable value of so doing was $175.
Turning then to the first category items, the court notes that section 800 of the Town of Hempstead Code requires that “ Workmanship in the fabrication, preparation and installation of materials shall conform to generally accepted good practice.” It finds that the defect in the shower tiling resulted from the fact that the sheetrock behind the tile was supported only by nails and did not rest on any bearing surface, that that installation did not conform to generally accepted practice, and that the reasonable cost of replacing the sheetrock and reinstalling the tile was $200. It finds that the dining room and den flooring was laid without proper allowance for expansion and in the same direction as the subflooring, that so laying it did not conform to generally accepted good practice and that the reasonable cost of relaying it is $500. It finds that on the east and north sides of the house the sill plate was below ground level, that this violated section 808 (f) (5) of the code, that it was constructed that way and did not result from any action of plaintiff nor did he acquiesce in such construction, and that the reasonable cost of installing flashing and performing other necessary corrective work is $1,000. It finds that the footings were not of the required depth and that the piers were not centered on the footings, that this did not conform to generally accepted practice, that it was necessary to open up the crawl space floor to inspect the footings and determine the location of piers with respect to footings, but that the nine additional piers and footings installed by plaintiff were based on a miscalculation of the bearing capacity of the soil, and that the reasonable value of the services required to open up the floor, remove the *329 debris, correct the five original piers and footings and relay the floor was $1,000. It further finds the reasonable value of LoGruidice’s services in connection with the shower, the flooring, the sill plate and the piers and footings to be $500. The above items the court finds were not reasonably discoverable by plaintiff prior to closing. Since recovery is for breach of contract and the defects involved were so substantial as to render the building partially unusable or unsafe, damages have been assessed on the basis of the reasonable value of correcting the performance (Bellizzi v. Huntley Estates, 3 N Y 2d 112). All of the remaining defects for which plaintiff claims are disallowed: the fuel gauge, fireplace support, crawl space vents, absence of straps and shims between joists and girder because discoverable on reasonable inspection prior to closing and, therefore, merged; the shower door for lack of proof as to why it was rehung; the claims that joists were improperly located 16 inches on center and that the north-south girder was improperly located because disproven by the Town’s Building Inspector; the vapor barrier because not required under the contract; the redecorating because as to taping it was discoverable and otherwise because it did not result from a condition for which recovery is allowed. Total damages allowed on the third cause of action are, thus, $3,375.
The implied warranty declared on in the sixth cause of action is that the building had been erected and would be completed in a good and workmanlike manner. Though it seems clear that there is no implied warranty in the sale of a completed house (Real Property Law, § 251; Dolezel v. Fialkoff, 2 A D 2d 642; Harmon Nat. Real Estate Corp. v. Egan, 137 Misc. 297; Lewy v. Clarke Ave., Inc., 128 Misc. 16; cf. McQuade v. Maidman, 207 Misc. 364) it has been held both that there is (Lutz v. Bayberry Huntington, Inc., 148 N. Y. S. 2d 762, supra) and that there is not (Eastman v. Britton, 175 App. Div. 476) an implied warranty of quality of a house in process of construction when the contract is made. While the trend of decisional law is toward holding that an implied warranty arises in the latter case (see Appendix), it is not necessary for the court to determine the question in the present case, nor to decide whether such a warranty will be implied when the contract includes express provision as to quality (cf. Lutz v. Bayberry Huntington, Inc., supra, with Turl’s Sons v. Williams Eng. Co., 136 App. Div. 710, and, see, Ann. 164 A. L. R. 1321).
As noted the warranty declared on is that the house would be completed in a good and workmanlike manner. Since the *330 contract called for construction in accordance with Building Code requirement as to materials and workmanship and the code required that workmanship conform to generally accepted practice, there is as to workmanship no difference between the contract requirement and the obligation under an implied warranty. While there may be some difference in obligation with respect to materials, the only claims relating to materials are that the bathroom installation should have been mud rather than adhesive and that a polyethylene vapor barrier should have been installed. The court does not find that construction in a good and workmanlike manner required either, though it did find the method of installation of the sheetrock not in accord with the contract and, of course, would also find that installation to be a violation of an implied warranty. Thus, the underlying right of recovery on the sixth cause of action would be no greater than under the third.
Nor would the closing of title have a less limiting affect on the amount recoverable by plaintiff if the theory of recovery were implied warranty. Even if the language of paragraph 24 be considered not to cover implied warranty (see Stryker v. Rusch, 8 A D 2d 244, cf. Lutz v. Bayberry Huntington, Inc., supra), the list made at closing is, under the rule of the Disbrow case (supra) a bar to recovery, except as to latent defects, for breach of the implied warranty. Since recovery under the sixth cause of action would, thus, be the same under the facts of this case as that allowed under the third, the sixth cause of action is dismissed as academic.
On the counterclaim, the court finds that the restaining of the dining room floor and the change of the attic louver were adjustments made by defendants without expectation of pay, that the doors claimed for were given to plaintiff, and that the other items claimed for were either done by plaintiff or persons whom he paid, or were done before title closed. The only item for which defendant corporation is entitled to judgment on the counterclaim is the $175 which was allowed to plaintiff at title closing for painting the outside shingles. The writing then made (Exhibit A) provided that if the shingles were not painted by June 30, 1962, plaintiff would repay the $175 to the builder. Plaintiff attempts to justify Ms failure to paint the shingles by the required date on the ground that he could not do so until the exterior trim had been painted. The evidence shows, however, that the exterior trim was painted during the Summer of 1964 but that the shingles have never been painted. Defendant is, therefore, entitled to the return of the allowance made.
*331 APPENDIX
The following table lists the jurisdictions in which implied warranty has been held to arise when the seller is the builder and the house is incomplete at time of contract.

Jurisdiction Case Nature of Warranty

England Jennings v. Tavener [1955] 2 All E. R. 769 Perry v. Sharon Development Co., [1937] 4 All. E. R. 390 Miller v. Cannon Hill Estates, Ltd. [1931] 2 KB. 113 Fit for habitation Same Workmanlike manner and proper materials; fit for habitation
Colorado Glisan v. SmolensJce, 387 P. 2d 260 Carpenter v. Donohoe, 388 P. 2d 399 F & S Constr. Co. v. Berube, 322 F. 2d 782 (CA, 10th) Fit for habitation Extended to completed house and includes warranty of compliance with building code and workmanlike construction. Fit for habitation
Illinois Week v. A:M Sunrise Constr. Co., 36 III. App 2d 383 (cf. Coutrakon v. Adams, infra) Workmanlike construction; fit for habitation
Indiana Jose-Balz Co. v. DeWitt, 93 Ind. App. 672 (but cf. Tudor v. Heugel, infra) Reasonable skill
Louisiana Jjoraso v. Custom Built Homes, 144 So. 2d 459 (while Bearman article, infra, indicates Louisiana has a relevant statute, it was not referred to in this case). House completed at time of sale; fit for habitation
New Jersey Schipper v. Levitt & Sons, 44 N.J. 70 Reasonable skill; fit for habitation
Ohio Vanderschrier v. Aaron, 103 Ohio App. 340 (cf. Rappich v. Altermatt, infra) Workmanlike construction; fit for habitation
Oklahoma Jones v. Gatewood, 381 P. 2d 158 Same
Texas Loma Vista Development Co. v. Johnson, 177 S. W. 2d 225, revd. on other grounds 142 Texas, 686 House complete except in minor detail; properly constructed and of good material
Washington Hoye v. Century Builders, 52 Wn. Fit for habitation 2d 830
Note that New York holds that a lease of residential property does not give rise to an implied warranty of fitness for habitation (Jaffe v. Harteau, 56 N. Y. 398).
Only one State rejects implied warranty with respect to a house under construction at the time of contract (Gilbert Constr. Co. v. Gross, 212 Md. 402), though the language in some of the cases cited below dealing with completed houses is broad enough to exclude implied warranty in the ‘ ‘ under construction ’ ’ situation as well.
The general rule is that there is no implied warranty on sale of a completed house. The rule is applied whether the house *332 is new and nnoccnpied or had been used by others before plaintiff purchased. In addition to the New York cases cited in the text, the following eases support that rule:
Alabama Druid Homes Inc. v. Cooper, 272 Ala. 415
Arizona Allen v. Reichert, 73 Ariz. 91
Georgia Walton v. Petty, 107 Ga. App. 753
Illinois Coutrakon v. Adams, 39 Ill. App. 2d 290 (which distinguished Weck case supra)
Indiana Tudor v. Heugel, 132 Ind. App. 579 (which made no reference to Jose-Balz case, supra)
Ohio Rappich v. Altermatt, 106 Ohio App. 282 (which distinguished Vanderschrier case, supra)
Oregon Steiber v. Palumbo, 219 Ore. 479, but see Caldwell v. Wells, 228 Ore. 389.
As noted above, Colorado, Louisiana and possibly Texas hold that an implied warranty arises even though the house has been completed at time of contract.
Generally on the question see Dunham, Vendor’s Obligation as to Fitness of Land for a Particular Purpose, 37 Minn. L. Rev. 108; Bearman, Caveat Emptor in Sales of Realty — Recent Assaults Upon the Rule, 14 Vand. L. Rev. 541; Selker, Right of Purchaser in Sale of Defective House, 4 Western Res. L. Rev. 357; Notes: 14 Ala. L. Rev. 245; 5 De Paul L. Rev. 263; 51 Ill. Bar. J. 498; 18 Md. L. Rev. 332; 34 Wash, L. Rev. 171; Ann. 78 ALR 2d 446; 7 Williston, Contracts (3d ed.), § 926A, 810-818; Friedman, Contracts and Conveyances of Real Property (2d ed.), § 1.2(n); 17A C. J. S., Contracts, § 329.
The above compilation excludes cases in which the builder contracted to erect a dwelling on land owned by plaintiff at the time contract was made (see 10 N. Y. Jur., Contracts, § 316, p. 286).