Ting-Wan Liang, Respondent, et al., Plaintiff, v Lawrence Malawista et al., Appellants. (And Another Action.)

Second Department, November 5, 1979

416

**APPEARANCES OF COUNSEL**

*Shamberg Bender & Marwell, P. C. (Stuart R. Shamberg* of counsel), for appellants.

*Wekstein & Fulfree (Morton N. Wekstein* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

In consolidated actions, *inter alia,* to recover damages for breach of contract (Action No. 1) and to foreclose a mortgage (Action No. 2), the defendants in Action No. 1 appeal from (1) stated portions of a judgment in Action No. 1, which, after a nonjury trial, *inter alia,* (a) awarded plaintiff Ting-Wan Liang the sum of $40,741.72, (b) directed that the sum of $21,672.61 due defendant Lawrence Malawista, Inc., be set off against the sum of $40,741.72 due to Liang, and (c) adjudged a certain mortgage made and delivered by Liang to Lawrence Malawista, Inc., to be satisfied, and (2) an order of the same court which directed that the said mortgage be marked as satisfied and discharged in the office of the Division of Land Records.

Four years after Ting-Wan Liang took title from the appellant real estate developer, he and his wife commenced Action No. 1 to recover damages for fraud and breach of contract. The trial court dismissed the cause of action for fraud (the Liangs have not appealed from that dismissal) but found in favor of Mr. Liang on the cause of action for breach of contract and awarded damages to remedy approximately 30 "defects" in the construction of their residence. The appeal raises issues as to whether the plans and specifications referred to in the contract of sale survived the conveyance of the deed, whether the Liangs have waived or are estopped from bringing this action, and whether this action is time barred by virtue of a contract provision guaranteeing the entire work against defects in materials and workmanship for a period of one year after the date of completion of the contract. A further issue appears as to whether Trial Term properly computed the damages due to Liang.

In June, 1969 the Liangs entered into a contract with appellant Lawrence Malawista, Inc., to purchase a 150-year-old house, which had been moved to its current location, and which was being extended by a modern wing. Extensive renovation and remodeling were also in progress. The contract, which was prepared by the seller's attorney, called for the sale of approximately two acres of land "and the single family residence moved to this site and being remodeled in accordance with plans entitled, 'Alterations and additions to house for Mr. Lawrence Malawista,' dated 9/4/68 by Nat O. Matson, consisting of seven sheets with 'General specifications —Waterbury house to Lot No. 3, Upper Shad Road'." Those specifications provide, *inter alia:*

"1.<u>Contract Documents</u>

"A. *The Contract includes* the Agreement between the Owner and the Contractor, *the Drawings, and the Specifications. Any items specified or called for in any one shall be as binding as if called for by all.*

"B. The intent of the documents is to provide for the completion and the conveyance of a Colonial home and remodeling and restoration of the portion of the job which was originally the Waterbury house, as noted on plans. * * *

"2.<u>Permits and Regulations</u>

"A. *The Contractor shall comply with all local, state and national laws, ordinances and regulations* relating to the

work, including specifically safety, fire prevention, health and sanitation. All electrical work to be in conformance with the standards of the National Board of Fire Underwriters. * * *

"3.Materials, Workmanship and Employees

"A. *All materials shall be new and of good quality. Damaged or defective materials shall not be used* * * *

"E. All workmen and subcontractors shall be qualified and skilled in their trades. *Workmanship* throughout *shall be consistent with current standards of good practice.*

"4.Guarantee

"A. The Contractor shall guarantee the entire work (including all subcontracts) against defects of materials and workmanship for a period of one year after the date of completion of the contract. * * *

"7.Cleaning Up

"A. At the completion of the work, all waste material and rubbish shall be removed from the premises" (emphasis supplied). The specifications further provide for the installation of footing drains around the entire perimeter of the foundation.

Although title to the premises was closed on July 11, 1969, construction was not fully complete at that time and the Liangs did not move in until approximately two weeks after the closing. Almost from the day they moved in and for several weeks thereafter, Mr. Liang made many complaints to appellant Lawrence Malawista about faulty construction and poor drainage.

In September, 1969 the Liangs retained a licensed architect, Le Roy F. Van Lent, who made a number of trips to the subject property and submitted reports dated January 9, 1970 and November 23, 1970, respectively. Mr. Van Lent found a failure to comply with the State Building Code, noncompliance with the plans and specifications and numerous instances of defective workmanship.

On August 1, 1970 the Liangs retained a firm of consulting engineers to investigate the conditions which caused drainage to enter the foundation, a pond to form in the lawn and the driveway to deteriorate. Tests revealed that underground and surface water drained toward the foundation which showed no evidence of having been waterproofed, that construction debris was present beneath the driveway and that the topography and soil textures of the land and the design and elevation of

the driveway caused entrapment of surface water. The engineers were of the opinion that curtain drains should have been installed in the rear of the house and the grade should have been cut back away from the foundation.

On the cause of action for breach of contract, Trial Term awarded Mr. Liang $26,126.33 in damages. We agree that Mr. Liang is entitled to recover certain damages for breach of contract, but the matter must be remanded to Trial Term for an amended calculation of those damages in accordance with the principles of law expressed herein.

There can be no serious question that the plans and specifications for the remodeled house were made part of the contract of sale. There is no clause in that contract which merges the said contract into the deed. Even if there had been such a merger clause, it has been held that "collateral or independent rights created by [a real estate] contract are not absorbed in the conveyance, but remain effective and capable of enforcement" (*Cohen v Polera & Sons Constr. Corp.,* NYLJ, Sept. 30, 1958, p 14, col 4 [HOPKINS, J.]; accord *Staff v Lido Dunes,* 47 Misc 2d 322 [MEYER, J.]). "The agreement to erect a house has been construed to be collateral to the main purpose of the conveyance and, accordingly, not subject to the doctrine of merger" (*Cohen v Polera & Sons Constr. Corp., supra;* accord *Staff v Lido Dunes, supra*). The agreement to remodel an existing house is no less "collateral" than an agreement to erect a house. Thus, the plans and specifications cannot, as appellants contend, be said to have merged in the deed.

Nor can the Liangs' action for breach of the contract be time barred by the "guarantee" clause in the specifications. Representations as to the quality of materials and workmanship appear elsewhere in the specifications and appellants cite no authority for the notion that the "guarantee" clause can time bar or disclaim a contract action based upon those other representations. We note also that this "defense" was never pleaded.

Finally, we turn to the question of whether the Liangs have waived or are estopped from suing for damages for (a) deviations from the plans and specifications and (b) defective materials or workmanship, by reason of their occupancy of the house. It is settled law that a "contractor ought not to be paid for that which he has failed to furnish unless there be in fact a waiver *which means an acceptance knowing of defects* or else an estoppel" (*Cawley v Weiner,* 236 NY 357, 361-362

[emphasis supplied]). It has been recognized as "common knowledge" that *the discovery of improper workmanship or materials cannot be easily made until after the purchaser has taken possession" (Cohen v Polera & Sons Constr. Corp., supra* [emphasis supplied]) and, in the absence of contrary evidence in this record, we hold that there was no waiver with respect to such defects of materials or workmanship. By a parity of reasoning there can be no waiver with regard to *latent* deviations from the specifications. However, it would be inequitable to charge appellants with deviations from the specifications which were obvious to the purchaser prior to his acceptance of the deed. At bar, for example, appellants should not have been assessed the cost of lengthening the garage. The Liangs could surely see the size of the garage when title was accepted, and they should be presumed to have intended to have a garage of that size. Accordingly, upon remand, Trial Term is directed to reduce the award to Mr. Liang by the amounts attributable to patent deviations from the specifications. All damages for defective materials or workmanship should stand (see *Cohen v Polera & Sons Constr. Corp., supra).*

■ Trial Term also erred in awarding damages for conditions caused not by the actions or omissions of the appellants, but rather which result from the natural topography and character of the soil at the site. It appears from the record that the pond in front of the Liang residence may be the result of such natural conditions. Further evidence should be adduced with respect to that issue.

■ Finally, Trial Term failed to consider the Liangs' duty to mitigate damages. In a report dated October 2, 1973, four years after the Liangs took possession of the house, an architect retained by them stated that certain conditions had been *aggravated,* viz:

"1. Settlement of stone slabs at grade level entrance to residence.

"2. Deterioration of driveway paving beyond repair and requiring removal and reconstruction of the same.

"3. Evidence of water penetration at rear wall of house caused by breaking of house sewer compounded by the leak of drainage provisions and lack of waterproofing of the foundation walls."

Nevertheless, Trial Term allowed $5,600 to remove and reconstruct the driveway and $800 for the settlement of the stone slabs at the grade level entrance to the house.

Accordingly, the case is remitted to Trial Term for a revised assessment of damages in accordance with the views expressed herein.

HOPKINS, J. P., TITONE, O'CONNOR and MARGETT, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered March 20, 1978, reversed insofar as appealed from, and order of the same court entered March 17, 1978, reversed, without costs or disbursements, the first, fourth, fifth, sixth and seventh decretal paragraphs of the judgment are deleted, and the actions are remitted to Trial Term for a new trial on the issue of damages to be awarded to plaintiff Ting-Wan Liang.