[850 NYS2d 497]

Novelty Crystal Corp., Respondent-Appellant, v PSA Institutional Partners, L.P., Appellant-Respondent.

Second Department, January 15, 2008

APPEARANCES OF COUNSEL

*Meyers Tersigni Feldman & Gray, LLP* (*Anthony L. Tersigni* and *Andrea Tersigni* of counsel), for appellant-respondent.

*McDonough Marcus Cohn Tretter Heller & Kanca, LLP*, New Rochelle (*Randy J. Heller* of counsel), for respondent-appellant.

## OPINION OF THE COURT

SPOLZINO, J.P.

The principal issue presented by this appeal is whether a purchaser of real property may maintain an action after the closing of title, in either contract or tort, to recover damages for the seller's failure to deliver the premises vacant and clean as required by the contract. We conclude that the purchaser may not do so where, as here, the terms of the contract do not provide for the survival of such a claim. Therefore, the Supreme Court should have denied that branch of the plaintiff purchaser's cross motion which was for summary judgment on the issue of liability on its first cause of action to recover damages for breach of contract and granted those branches of the defendant seller's motion which were for summary judgment dismissing the first and third causes of action.

The facts underlying this dispute are simple. Despite having agreed that the premises "will be delivered vacant and clean, free of all personalty, tenancies and occupancies," the defendant seller failed to remove from the premises prior to closing several storage bins, containers, and other personal property. The plaintiff purchaser did not raise the issue at closing. After allegedly spending approximately $17,000 to remove the items left by the seller, the purchaser commenced this action, asserting claims, inter alia, to recover damages for breach of contract and trespass. The Supreme Court granted both that branch of the seller's motion which was for summary judgment dismissing the

trespass claim and that branch of the purchaser's cross motion which was for summary judgment on the issue of liability on breach of contract claim. The parties appeal and cross-appeal, respectively, from the portion of the order by which they are aggrieved.

The contract further provides that "the seller may remove any and all storage bins and containers and any and all other personalty" from the premises. This provision does not implicitly absolve the seller of its obligation to deliver the premises vacant and clean. "May" is a permissive term (*see Matter of Marro v Bartlett*, 61 AD2d 729 [1978], *affd* 46 NY2d 674 [1979]). By contrast, the seller's obligation to deliver the premises vacant is defined by the use of the mandatory "will." A contract should be construed, wherever possible, in such a way as to reconcile and give effect to all of its provisions (*see God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP*, 6 NY3d 371, 374 [2006]; *Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]; *Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46 [1956]; *Matter of Coppola v Stroker*, 235 AD2d 536, 537 [1997]). It would be inconsistent with this maxim to construe the seller's entitlement to remove the personalty here as implicitly overriding the obligation to deliver the premises vacant. This is a contract between sophisticated commercial parties represented by counsel. If they had intended that the seller would not be obligated to remove the storage bins, containers, and other personal property, the contract would have so provided. It did not.

The difficulty presented by this appeal and cross appeal is not with respect to the seller's obligations. It is, rather, with the purchaser's resort to this litigation after having failed to obtain the seller's compliance with the contract before tendering the purchase price at closing. The rule of law applicable to such disputes has frequently been stated.

> "Generally, the obligations and provisions of a contract for the sale of land are merged in the deed and, as a result, are extinguished upon the closing of title. However, this rule does not apply where there is a clear intent evidenced by the parties that a particular provision [of the contract of sale] shall survive delivery of the deed, or where there exists a collateral undertaking" (*Davis v Weg*, 104 AD2d 617, 619 [1984] [citation omitted]; *see Rothstein v Equity Ventures*, 299 AD2d 472, 475 [2002]; *Dour-*

*ountoudakis v Alesi*, 271 AD2d 640, 641 [2000]; *527 Smith St. Brooklyn Corp. v Bayside Fuel Oil Depot Corp.*, 262 AD2d 278 [1999]; *Goldsmith v Knapp*, 223 AD2d 671, 673 [1996]; *Noufrios v Murat*, 193 AD2d 791, 792 [1993]; Powell, Real Property § 81.05 [11] [d]). Neither of these circumstances is present here.

An undertaking that is collateral to the conveyance is not extinguished by the acceptance of the deed, regardless of the terms of the contract (*see Ting-Wan Liang v Malawista*, 70 AD2d 415, 419 [1979]), because it is "not a part of the main purpose of the transaction, that is, the conveyance of real estate, [and therefore] by [its] very nature may show an intent that [it] should not be merged in the deed" (*Siebros Fin. Corp. v Kirman*, 232 App Div 375, 377 [1931]; *Lambert v Krum*, 121 Misc 170, 180 [1923]). The term "collateral undertaking" has been defined as a contractual commitment "that is not connected with the title, possession or quantity of land" (*Alexy v Salvador*, 217 AD2d 877, 878 [1995]; *see Carr v Roach*, 2 Duer 20, 25 [1853]). Contractual obligations that have been found to be collateral involve either an obligation that is extraneous to the sale of the realty, such as the obligation to build on the property (*see Meyer v Woodward-Brown Realty Co.*, 209 App Div 548, 553-554 [1924], *affd* 239 NY 613 [1925]; *Staff v Lido Dunes, Inc.*, 47 Misc 2d 322, 327 [1965]; *Cohen v Polera & Sons Constr. Corp.*, NYLJ, Sept. 30, 1958, at 14, col 4), or which establish a continuing duty that will outlive the consummation of the sale, such as a seller's agreement to construct improvements on the property for the purchaser after the closing of title (*see Metro Group Constr. Corp. v Town of Hempstead*, 24 AD3d 632, 633 [2005]), correct construction defects thereafter (*see Moller v Candlewood Constr. Corp.*, 12 AD2d 959 [1961]) or pay for the future maintenance of a common bulkhead (*see Goldsmith v Knapp*, 223 AD2d at 673), the designation of a particular area of a condominium development as common area (*see Board of Mgrs., Washington's Headquarters Townhouses Condominium v Gottlieb*, 186 AD2d 525, 526-527 [1992]), or an agreement to remodel an existing house (*see Ting-Wan Liang v Malawista*, 70 AD2d at 419).

By contrast, a "contract provision cannot be a collateral undertaking if it is 'an integral part of the principal purpose of the contract, namely a conveyance of title to real property' " (*Alexy v Salvador*, 217 AD2d at 878, quoting *Yaksich v Reloca-*

*tion Realty Serv. Corp.*, 89 Misc 2d 410, 411 [1977]; *see Summit Lake Assoc. v Johnson*, 158 AD2d 764, 766 [1990]). Thus, the payment of the purchase price is not collateral (*see 527 Smith St. Brooklyn Corp. v Bayside Fuel Oil Depot Corp.*, 262 AD2d 278 [1999]), nor is the obligation to convey the entire property (*see Summit Lake Assoc. v Johnson*, 158 AD2d 764 [1990]) or some aspect of it (*see Alexy v Salvador*, 217 AD2d at 878), or the requirement that the well, septic system, and leaching field be within the bounds of the property (*see Hunt v Kojac*, 245 AD2d 858, 859 [1997]).

The delivery of the premises vacant and clean is but one aspect of delivering possession of the premises, which can never be collateral to the transfer of title. The intrinsic relationship between title and possession has been recognized since the time of Coke and Blackstone. Borrowing from Coke, Blackstone defined "title" as "the means whereby the owner of lands hath the just possession of his property" (2 Blackstone, Commentaries on the Laws of England, at 195 [1765-1769]), describing it to be an "ancient maxim of the law, that no title is completely good, unless the right of possession be joined with the right of property" (2 Blackstone, Commentaries on the Laws of England, at 199 [1765-1769]). Echoing this in contemporary jurisprudence, both the Supreme Court and our Court of Appeals have recognized that the ownership of property necessarily entails the right to "possess, use and dispose of" the property (*United States v General Motors Corp.*, 323 US 373, 378 [1945]; *Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, 398 [1994]).

The right to possession upon closing necessarily includes the right to exclude the seller from continued occupancy of the premises. It is, in fact, of the essence of the contract, if only for the practical reason that a purchaser will not likely bargain for a building full of the seller's personalty. The right to exclude others, as well as their property (*see Buchanan v Cardozo*, 16 NY2d 1029, 1031 [1965]; *Storch v Town of Cornwall*, 294 AD2d 426, 427 [2002]; *Dellaportas v County of Putnam,* 240 AD2d 358, 359 [1997]), is "one of the most essential sticks in the bundle of rights that are commonly characterized as property" (*Nollan v California Coastal Comm'n*, 483 US 825, 831 [1987]; *see Loretto v Teleprompter Manhattan CATV Corp.*, 458 US 419, 433 [1982]; *Kaiser Aetna v United States*, 444 US 164, 176 [1979]; *Matter of Smith v Town of Mendon*, 4 NY3d 1, 12 [2004]; *Seawall Assoc. v City of New York*, 74 NY2d 92, 103 [1989]). Because possession of the premises thus goes to the essence of

the transaction, the obligation to deliver the premises vacant and clean cannot be collateral to the transfer of title.

The breach of contract claim at issue here can survive the closing, therefore, only if the contract reflects a clear intent that it do so (*see Davis v Weg*, 104 AD2d 617 [1984]). Several provisions are relevant to this issue. First, the contract provides that "upon closing" the purchaser would "accept the premises 'as is', 'where is' and with all of its faults." In addition,

> "Purchaser, upon closing, shall be deemed to have waived, relinquished and released Seller . . . from and against any and all claims, demands, causes of action (including causes of action in tort) . . . which Purchaser might have asserted or alleged against Seller . . . arising out of any . . . physical or environmental conditions . . . and any and all other acts, omissions, events, circumstances or matters regarding the premises."

Next, the contract provides that "[t]he acceptance of the Deed shall be deemed to be full performance of, and discharge of, every agreement and obligation on Seller's part to be performed under this Contract, except for those which this Contract specifically provides shall survive the Closing." Finally, the contract provides that "[t]he parties each agree to do such other and further acts and things, and to execute and deliver such instruments and documents . . . and which may be reasonably requested from time to time, whether at or after the Closing, in furtherance of the purposes of this Contract" and that this provision "shall survive the closing."

With the exception of the last-quoted provision, the words used in the contract with respect to survivability are susceptible of no interpretation other than that any such claims, whether in tort or contract, are barred (*see Hi Tor Indus. Park v Chemical Bank*, 114 AD2d 838, 839 [1985]; *Sklarsky v Wayne Lawrence Constr. Corp.*, 28 Misc 2d 391, 393 [1961]). When the terms of the contract are clear and unambiguous, the contract must be enforced on that basis (*see Goldstein v AccuScan, Inc.*, 2 NY3d 811, 812 [2004]; *Signature Realty, Inc. v Tallman*, 2 NY3d 810, 811 [2004]; *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]).

The last-quoted provision, while less clear, does not lead to a different conclusion. The obligation "to do such other and further acts and things . . . in furtherance of the purposes of this Contract" is not, as the seller contends, simply a "further as-

surances" clause within the meaning of Real Property Law § 253, since it includes the obligation to do "other and further acts and things" unrelated to title. The obligation to deliver the premises "vacant and clean," however, is not an "other and further" act or thing. It is, rather, an explicit obligation of the seller under the contract to be performed at or prior to the closing of title. As such, it is neither "other" nor "further" and, therefore, does not on that basis fall within the category of obligations that survive the closing of title pursuant to this contract provision. Since the contract thus fails to evidence a clear intent that the seller's obligation will survive the closing of title, the purchaser's contract claim must be dismissed (*see Davis v Weg*, 104 AD2d 617 [1984]).

The purchaser cannot avoid the defeat of its contract claim by pleading in tort. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987] [citations omitted]). Put simply, "where a party is merely seeking to enforce its bargain, a tort claim will not lie" (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 316 [1995]).

Here, the duty upon which the purchaser's claim depends, and which the purchaser seeks to enforce by means of both its contract and trespass claims, arose from the provision of the contract requiring the seller to deliver the premises "vacant and clean, free of all personalty, tenancies and occupancies." Since the trespass cause of action is thus nothing more than a contract claim in tort clothing, it must be dismissed as well.

Our conclusion that the complaint must be dismissed follows additionally from concern about the deleterious effect on transactional real estate practice that would ensue from reaching a contrary result. The provisions of the contract of sale that are in issue today are not uncommon; they, or similar terms, are found in virtually every contract for the conveyance of real property, including the thousands of residential real estate contracts that close each year in this state. These provisions are designed to ensure that all issues related to the conveyance are resolved prior to the tender of the purchase price and the delivery of the deed at the closing so that the parties may go their separate ways thereafter without further dispute (*see* Powell, Real Property § 81.05 [8]).

If a claim related to the vacancy of the premises is collateral and, therefore, not necessarily resolved at the closing, then so are other claims related to possession, including claims concerning the condition of the premises. "As is" clauses would be meaningless, and the closing of title would be little more than a ceremonial occasion on which documents are executed but there is little, if any, impact on the parties' respective obligations to one another, since every seller would remain subject to suit until the six-year statute of limitations applicable to contract claims (see CPLR 213 [2]) had run. The resulting litigation would, with apologies to Sir Winston Churchill, make the closing certainly not the end of the process, or even the beginning of the end, but, more likely, only the end of the beginning (see Winston Churchill, Speech at the Lord Mayor's Luncheon, Nov. 10, 1942). That is in the interest of neither sellers nor purchasers.

Accordingly, the order of the Supreme Court is reversed insofar as appealed from, on the law, that branch of the plaintiff's cross motion which was for summary judgment on the issue of liability on the first cause of action is denied, those branches of the defendant's motion which were for summary judgment dismissing the first and third causes of action are granted, and the order is affirmed insofar as cross-appealed from.

SANTUCCI, FLORIO and ANGIOLILLO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, that branch of the plaintiff's cross motion which was for summary judgment on the issue of liability on the first cause of action is denied, and those branches of the defendant's motion which were for summary judgment dismissing the first and third causes of action are granted; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant.