OPINION OF THE COURT
Daniel Palmieri, J.
This petition brought pursuant to article 78 of the Civil Practice Law and Rules is denied and the proceeding is dismissed.
Petitioners Civil Service Employees Association, Inc., A.F.S.C.M.E., Local 1000, A.F.L.-C.I.O., by its Local 865 (Association), and Francesco Pignataro seek to have the court endorse Pignataro’s attempted revocation of a letter of resignation and settlement agreement he provided to the respondents. For the reasons that follow, the court cannot do so and accordingly denies the petition.
The essential facts are undisputed. The Association and respondent Baldwin Union Free School District (District) are the parties to a collective bargaining agreement (CBA), and at all relevant times petitioner Pignataro was a building custodian in the employ of the District and a member of the Association. He was injured on the job in March of 2007, and could not work. After being absent for the maximum period allowed under the CBA, he was notified by respondent Rosemarie Coletti, Assistant Superintendent for Human Resources, that he would be removed from the payroll. A grievance was filed by the Association on Pignataro’s behalf, in which he claimed additional sick leave accruals. He rejected a proposed settlement in the fall of 2008, and upon presentation of a note from a physician clearing him to perform his regular duties he sought to return to work.
Pignataro was permitted to return to work in February 2009. He then claimed he could not fully perform his duties because of the 2007 injury. He subsequently contended, in a separate grievance dated February 11, 2009, that the District had not made “reasonable accommodations” under the Americans with Disabilities Act. The Association filed demands for arbitration for each grievance in May 2009.
On July 16, 2009, while both arbitrations were pending, both Pignataro and his Association representative signed an agreement with the District, which was dated August 12, 2009. It resolved the first issue of his termination for absence and the *798 subsequent grievance for the accrued sick leave. The reason for the August 12 date on the agreement was that the District could not be bound until, and thus its agreement was contingent upon, approval by its Board of Education. The next meeting of the Board was August 12, 2009.
Specifically, the agreement provided, in pertinent part that (1) it was in settlement of the grievance for available leave accruals; . (2) Pignataro would be paid $50,000 for accumulated leave days from October 1, 2007; (3) Pignataro “shall” submit a letter of resignation for purpose of retirement, to be effective as of the close of business on August 12, 2009; (4) the agreement was subject to Board approval, and if it “does not approve this agreement, such resignation shall be deemed withdrawn, and Mr. Pignataro shall remain an employee of the District. In such event, Mr. Pignataro’s leave entitlements shall be restored, retroactive to July 17th 2009”; and (5) petitioners released and discharged the District, Board, and employees from “all actions, suits, charges, claims, grievances, etc., they may have regarding the claim for compensation and benefits to Mr. Pignataro from . . . March 9, 2007 to the present time ... all pending arbitrations and grievances filed on behalf of Mr. Pignataro shall be withdrawn with prejudice.”
In a separate document, dated July 16, 2009, Pignataro signed a letter of resignation, addressed to Coletti. In its entirety, the letter stated as follows:
“I hereby submit my letter of resignation from the position of custodian for the Baldwin Schools, effective at the close of business on August 12, 2009.
“This resignation is contingent upon full execution and Board approval of a stipulation of settlement with the District, dated August 12, 2009.”
However, by letter dated July 23, 2009 Pignataro sought to rescind his resignation and the “proposed settlement.” He stated that the resignation is no longer effective, that he did not agree to waive his rights and did not agree to the terms of the retirement proposal.
On August 12, 2009 the Board, by its president, executed the settlement agreement, and thereby refused to accept Pignataro’s purported withdrawal of his resignation and repudiation of the settlement. This proceeding followed, in which respondent’s refusal to reinstate him to his custodial position, and to deny him salary and benefits under the CBA is alleged to be arbitrary *799 and capricious, and in violation of his due process rights, including those under the federal Older Workers Benefit Protection Act (OWBPA) and the New York State Civil Service Law.
The question before this court ultimately is a simple one: was the agreement he signed subject to unilateral recision by Pignataro? If the answer is yes, the Board’s decision not to allow him to do so and to accept his resignation must be judged arbitrary and capricious. If the answer is no, the Board’s decision was not arbitrary and capricious, and this petition must be denied. The court holds that the settlement agreement was binding on Pignataro, and under its terms he was not able to repudiate the settlement, rescind his resignation and revive his employment with the District.
Provided their terms are clear, in writing, and are subscribed by the party to be charged, settlement agreements are to be enforced. (Bonnette v Long Is. Coll. Hosp., 3 NY3d 281 [2004]; Hallock v State of New York, 64 NY2d 224 [1984].) To be effective, any qualifications on the obligations of the party signing the agreement must be expressed in the writing itself. (See Goldstein v AccuScan, Inc., 2 NY3d 811 [2004]; see also Novelty Crystal Corp. v PSA Institutional Partners, L.P., 49 AD3d 113 [2d Dept 2008].) A clear release of claims not the result of fraud or overreaching should likewise be enforced. (Booth v 3669 Delaware, 92 NY2d 934 [1998].)
Here, the terms of the agreement are quite clear, and it was undisputedly signed by Pignataro and an Association representative after negotiations. The only contingency found relates to the need for Board approval of the agreement, and only upon the Board’s disapproval was his resignation to be deemed withdrawn. There is no language giving Pignataro the right to rescind the resignation under any other circumstance, nor was there a period given during which he could choose to withdraw from the agreement itself. In short, and contrary to the petitioners’ contentions, this was not a “proposed settlement.” It was a settlement, signed by the parties to be charged. Indeed, the resignation letter itself refers to full execution and approval by the Board as the only contingencies. Further, there is no charge of fraud or overreaching or of any other behavior by the District that might call the validity of the agreement into question. Accordingly, the court finds that it was fully enforceable by the District upon the Board’s approval.
The petitioners’ reliance on Matter of Totevski v Board of Educ. of Hempstead Pub. School Dist. (178 Misc 2d 758 [Sup *800 Ct, Nassau County 1998]) is misplaced. They cite this case for the proposition that a letter of resignation may be withdrawn prior to a legally binding acceptance. However, the petitioners had agreed that Pignataro “shall” resign in the settlement agreement, and the resignation letter therefore could not be rescinded unless the entire agreement was unenforceable by the District. This was noted by the Appellate Division, Third Department in its citation to Totevski, when it stated that “[w]hile authority exists . . . that a retirement letter may be withdrawn prior to a legally binding acceptance by a board of education” this principle would be affected by “whether the retirement letter was the result of a formal agreement between the parties such that it could not be unilaterally rescinded.” (City School Dist. of City of Elmira v Newcomb, 266 AD2d 622, 623 [3d Dept 1999] [citations omitted].) As indicated above, such a formal agreement exists in this case, and for that reason Pignataro was not free to unilaterally rescind his retirement letter.
The court cannot agree with petitioners that the agreement is unenforceable because it did not contain language permitting Pignataro to rescind the agreement within seven days under the Older Workers Benefit Protection Act. (29 USC § 626 [f].) This section is an amendment to, and applies only to claims made under, the Age Discrimination in Employment Act (ADEA), and gives a worker, inter alia, time to change his or her mind about the release of ADEA claims. (See Oubre v Entergy Operations, Inc., 522 US 422 [1998].) As no rights under ADEA were waived, and neither of the grievances and pending arbitrations concerned a claim made under ADEA, OWBPA language and protections were not mandatory.
Finally, by signing the agreement settling his leave accrual grievance, and resigning as a part thereof, Pignataro waived any due process rights he may have had under the Civil Service Law or the CBA regarding his separation from District employment. (Matter of Miller v New York State Dept. of Correctional Servs., 126 AD2d 831 [3d Dept 1987], affd 69 NY2d 970 [1987]; Matter of Wilson v Jackson, 161 AD2d 652 [2d Dept 1990].)
Accordingly, under the terms of the settlement agreement executed by the petitioners the resignation could not be withdrawn, and petitioner Francesco Pignataro was bound to all the other terms of that agreement as well, including the release of *801 the respondents from the current and any other claims flowing from his alleged right to salary and benefits. The petition is therefore denied, and the proceeding dismissed.