Kenneth H. Lange, J.
The first action is brought by the secondary purchasers of a home for damages incurred by them in remedying defects in the septic system, constructed by defendant, Thornwood Acres "D”, Inc.
The defendant, Gyory was president of Thornwood, and was the signator of a "guaranty” of said system required by the rules of the Westchester County Health Department.
The complaint in the first action alleges four causes of action: A breach of an express warranty contained in the "guaranty of separate sewage system”; fraud based on representations contained in the same guarantee form; a cause of action against Gyory individually based on his alleged written undertaking to be responsible for the acts of corporation; and an action for alleged fraud on the public for which punitive damages are sought. The plaintiff in the first action seeks compensatory damages of $1,700 and $5,000 punitive damages.
This case was originally commenced in the County Court of Westchester County and transferred for trial in this court by order of that court (Dachenhausen, J.), pursuant to section 214 in the Uniform Justice Court Act. The maximum damages recoverable in the court on such a transfer under that statute may not exceed $3,000.
The defendants in the first action deny the allegations of warranty and assert that the two-year guarantee had run before any notice of defects was given to them. They also contend that this action is essentially one in negligence governed by a three-year Statute of Limitations. The defendant, Gyory, admits those allegations of the third cause of action as to his individual responsibility for the acts of the corporate defendant.
After the commencement of the initial action the defendants brought the third-party action against Harold F. Campbell, Jr., third-party defendant. Campbell was the engineer retained by the defendants on this project, and they allege that he designed and supervised the construction of this system. They contend that they relied on his representation that the system designed and built had been in accordance *55 with the health department rules. The third-party plaintiffs seek judgment against Campbell if there is any recovery against the defendants in the first action.
The answer of the third-party defendant alleges that the defendants themselves constructed and installed the septic system, and that this system was not the one that he had designed. Campbell also alleges that the system was modified by the defendants after his inspection.
In 1968 the defendant, Thornwood Acres "D”, Inc. undertook to construct a single-family home on speculation, on a building lot, measuring approximately 75 feet by 133 feet, owned by it in the Town of Bedford. During construction this defendant entered into a contract of sale of the premises and the completed home to the original purchasers named Ross. One of the final steps in the completion of the home was the construction of the septic system.
The third-party defendant, Campbell, had been retained to design a septic system for this building and did so in November of 1968, filing an approved plan with the County Health Department. The defendants hired a septic contractor to build this system but that contractor withdrew from the project after installing the tank. This contractor refused to construct the remainder of the system consisting of a distribution and absorption system commonly referred to as "fields.” The defendant, Thornwood Acres "D”, Inc., undertook to construct the balance of the system itself. In September of 1969, a laborer for the defendant was assigned this task, and he laid out and installed a network of trenches, distribution boxes and piping.
In order to obtain a certificate of occupancy and to close title with the initial purchasers, it was necessary for the defendants to have the septic system inspected and certified "as-built” to the health department by a licensed professional engineer. The third-party defendant, Campbell came to the property and inspected the system on or about September 16, 1969. This inspection was made while the trenches were open and before final grading of the site had been done. The system that he saw was quite different from the one that he had designed and filed with the Health Department in 1968. That plan showed three 60-foot long absorption trenches on the east side of the house and two on the west. The system built by the defendants had no trenches on the east side and an elaborate network of trenches of varying lengths on the west side of the *56 premises. It was necessary for Campbell to measure the trenches installed and to draw a field sketch of the system. This sketch was transferred to a detailed drawing which was certified by Campbell and filed with the health department. This drawing was known as the "as-built plan.”
On or about September 16, 1969, the defendant, Gyory, signed the "guaranty” of the septic system and filed this paper with the Health Department. This document stated in part: "I represent that I am wholly and completely responsible for the location, workmanship, material, construction and drainage of the sewage disposal system serving the above described property, and that it has been constructed as shown on the approved plan or approved amendment thereto, and in accordance with the standards, rules and regulations of the Westchester County Department of Health, and hereby guaranty to the owner, his successors, heirs or assigns, to place in good operating condition any part of said system constructed by me which fails to operate for a period of two years immediately following the date of completion of the sewage disposal system, or any repairs made by me to such system, except where the failure to operate properly is caused by the willful or negligent act of the occupant of the building utilizing this system”.
The premises were conveyed by defendant, Thornwood Acres "D”, Inc., to the initial purchasers, Ross, in that same month of September, 1969. The septic "guaranty” for and the "as-built plan” were delivered by the defendants to the new owners at the closing of title as required by the health department rules. The Rosses took possession of the house and remained in possession for one year, until September of 1970. When they took possession, the final grading of the sight had been completed. No change in grade or any work on the septic system was done during the time they occupied the house. The Rosses did detect an odor in the house on one occasion during the year they were in possession. The house was unoccupied from September, 1970, until March of 1971 when it was sold by the Rosses to the plaintiffs, Jack and Sara Herz.
At the closing of title from Ross to Herz on March 18, 1971, the plaintiffs were given the owner’s copy of the septic system "guaranty” and a copy of the "as-built plan” dated September 16, 1969.
Within three months of taking title, the Herzes experienced problems with odors and leakage of effluent from the septic *57 system. These problems appeared to subside during dry weather and after they had the septic tank pumped. No repairs or alterations were made to the system by the plaintiffs, and no changes in grade were made by them except by adding small amounts of topsoil over the areas where the effluent was leaking from the system.
In April and May of 1973, the situation had deteriorated to such an extent that a number of complaints were made by neighbors of the plaintiffs, to the county health department. In response to these complaints a representative of the county health department visited the premises and instructed the plaintiffs to have the system repaired.
When the system was uncovered by a contractor for the plaintiffs in May of 1973, it was discovered that, instead of the 185 feet of perforated pipe and absorption trenches shown on the September 15, 1969 "as-built plan”, there were only 42 feet of perforated pipe and absorption trench actually connected to the septic tank. One 40-foot pipe and trench located near the house was not connected to the septic tank at all. It was also obvious that extensive portions of the system as shown on the "as-built plan” could not have been accommodated on the site with the grade that existed in 1973.
There was no dispute with the testimony of the third-party defendant that the system shown by him on the "as-built plan” was actually there when he made his inspection in September of 1969. All parties to the suit and an inspector from the county health department, who testified in the case, agreed also that Campbell enjoyed an excellent professional reputation as an engineer in the designed construction of septic systems.
The system that remained in May of 1973 violated numerous provisions of the health department rules; however, the failure of the system to operate properly was primarily due to the insufficient amount of absorption trench installed and connected to the septic tank. In particular, it appeared on all of the testimony that the capacity and life of the system could have been doubled if the 40-foot trench, nearest the garage had been connected to the tank.
The court is irresistably led to the conclusion that the system was altered or destroyed by the defendants after the inspection by Campbell in September of 1969, but prior to delivery of possession of the house to the Rosses. This conclusion is reinforced by uncontradicted testimony that the de *58 fendant, Gyory, told the third-party defendant, Campbell, that he had disconnected a septic line on one of the homes in the Cedar Downs Subdivision, where this property was located, because of a purchaser’s complaint about odors. There was also testimony that the defendants had, in another case constructed a carport over a septic system after the "as-built plan” was filed. It is also the court’s conclusion that the defendant, Gyory, had personal knowledge that the facts represented in the "guaranty” delivered to the Rosses were not true at the time it was delivered to them and filed with the health department.
Having made these findings of fact, it is necessary to address the legal questions presented in this case.
It is doubtful whether there is any implied warranty applicable to the sale of real property in a case where the building in question was not built for the plaintiff. (See Dolezel v Fialkoff, 2 AD2d 642; and Staff v Lido Dunes, 47 Misc 2d, 322; 25 ALR3d 383.) The plaintiff is therefore restricted to the terms of the "express” warranty of September 16, 1969 filed with the department of health and delivered to the owners of the property.
Neither counsel nor the court has been able to locate a reported case in this State of an action under the typical septic system warranty required by the health department. The courts have recognized an action for express warranty in the similar case where the builder warrants substantial compliance with plans and specifications as required by the Veterans’ Administration and the Federal Housing Authority. (See Beagelman v Lydia Homes, 11 Misc 2d 158.) One of the few reported cases on the VA-FHA warranties that recovery must be denied where there was no notice of the builder’s alleged nonconformity with the plans and specifications, within the term provided in the express warranty (one year for VA-FHA cases).
In the present case, the system was completed in September of 1969, and the first notice to the builder of defects was in May of 1973. The express warranty was limited to a period of two years from the completion of the system. The plaintiffs therefore, are barred from recovery against the defendants for breach of express warranty under the first cause of action.
The plaintiffs second cause of action alleges fraudulent representations by the defendants contained in the "guaranty”. Paragraph 12 of the complaint alleges that the defend *59 ants represented to the original purchasers and their successors and assigns, including Herz, that the septic system had been constructed as shown on the plans approved by the Westchester County Health Department and in accordance with the department’s rules and regulations. This paragraph of the complaint was admitted in its entirety by the defendant’s answer. In addition to this admission, the text of the "guaranty” and section 2.4 of the rules and regulations make it clear that the representations are directed to subsequent owners of the property as well as to the original ones. The plaintiffs are persons who were intended to rely on the representations made by the defendants, even though they were not parties to the original sale. (State Street Trust Co. v Ernst, 278 NY 104, 121; 24 NY Jur, Fraud and Deceit, § 200; 37 Am Jur 2d, Fraud and Deceit, § 298.)
The plaintiffs in this case relied on the representations and believed that they were purchasing a home which met governmental standards for occupancy. It was part of the value they purchased that they received from the original owners the "guaranty” and the "as-built plans” for the septic system. Although there is no indication that these representations were the sole inducement for the purchase, this is not required. (See State Street Trust Co. v Ernst, supra, p 122.)
On the second cause of action the court finds for the plaintiffs against both defendants. In reaching this determination the court is mindful that the Statute of Limitations for fraud is lengthy and runs from the discovery of the fraud. The holding in this case does not create a new remedy or extend the builder’s responsibility in the ordinary case beyond the two years provided in the health department rules. It is indeed a rare case when there is such convincing proof that the builder knowingly made affirmative, fraudulent representations of facts within his personal knowledge. The plaintiffs’ actual damages for remedying the defects in the system were $1,348.75 and they are entitled to recover this sum from the defendants.
The complaint also demands punitive damages on the basis of an alleged fraud on the public. The representations here were not aimed at the public generally, but at the limited class of persons who were the owners or prospective owners of this property (Vinlis Constr. Co. v Roreck, 27 NY2d 687). The underlying private wrong to the plaintiffs is susceptible of adequate compensation by judgment for the actual costs of *60 remedying the defect. (American Electronics v Neptune Meter Co. 30 AD2d 117.)
The plaintiffs shall recover of the defendants on the second cause of action the sum of $1,348.75 together with costs and disbursements.
The proof in this case does not support the contentions in third-party complaint, and the suit against the third-party defendant, Campbell, is dismissed with $10 costs to the third-party defendant against the third-party plaintiffs.